**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| Birch Telecom, Inc., et al., | ) | Case No. 05-12237(PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |

## MEMORANDUM OPINION

Kimberly E.C. Lawson
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801

Counsel for Tamie Barsky,
the Estate Representative

Neil R. Lapinski
Rafael X. Zahralddin-Aravena
ELLIOTT GREENLEAF
Wilmington, DE 19801

Adolfo Campero, Jr.
Campero & Associates, P.C.
315 Calle Nel Norte, Suite 207
Laredo, TX 78041

Dated: June 2, 2009

**WALSH, J**.

This is with respect to the Objection of Tamie Barsky, the Estate Representative ("Representative") of Birch Telecom, Inc. and its subsidiaries, reorganized debtors ("Debtors") (Doc. # 1144) to the Claim of A-Tech Surfus Internet Connect, L.L.C. ("A-Tech") (Doc. # 1146, ex. A). In the Objection, the Representative requests that this Court enter an order disallowing the Claim. On June 25, 2008, the parties presented oral argument to the Court as to the Claim on the following issues: (1) the filed tariff doctrine as a bar to the damages claim asserted by A-Tech; and (2) the preclusive effect of the January 31, 2005 Memorandum and Order from the United States District Court for the Southern District of Texas. At that hearing, I requested additional briefing as to these two issues. On January 27, 2009, the Representative submitted an Opening Brief on these limited issues. (Doc. # 1157.) A-Tech did not respond. For the reasons briefly discussed below, I will disallow the Claim in its entirety.

## BACKGROUND

On September 28, 2003, A-Tech and Debtors entered into an agreement for telecommunications services, including telephone and data services. As a telecommunications provider, Texas state law required Debtors to file a tariff for approval by the Texas Public Utility Commission, which Debtors had done prior to agreeing to service A-Tech. Debtors were unable to provide the data services

3

to A-Tech.    On March 4, 2004, A-Tech filed a complaint against

Debtors in Texas state court which it later amended to allege

fraud, negligence, breach of contract, deceptive trade practices,

and breach of express warranty of services arising from Debtors'

failure to furnish data services.    Debtors removed that action to

the United States District Court for the Southern District of

Texas.    Debtors also filed a motion to compel arbitration pursuant

to the parties' agreement and the tariff.    (Doc. # 1157, pp. 2-7.)

On January 31, 2005, pursuant to its analysis of whether the

agreement and/or the tariff required arbitration, the District

Court denied Debtors' motion to compel arbitration.    (Id. at ex.

I.)

        On August 12, 2005, Debtors filed voluntary petitions for

relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et

seq.    On November 11, 2005, A-Tech filed a proof of claim in an

unliquidated amount exceeding $1,000,000.    (Id. at pp. 11-12.)    On

May 22, 2008, the Representative filed the Objection to the Claim,

arguing, among other things, that A-Tech's Claim is barred by the

filed tariff doctrine under Texas Law.    (Doc. # 1144, ¶ 82-92.)

**DISCUSSION**

        First, I agree with the Representative that the District

Court's January 31, 2005 Memorandum and Order does not preclude the

Representative from asserting that the filed tariff doctrine bars

A-Tech's Claim.    The doctrine of preclusion encompasses two

4

distinct concepts: claim preclusion and issue preclusion.  Under Third Circuit jurisprudence, claim preclusion -- also termed res judicata -- is triggered when there has been "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action."  Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 504 (3d Cir. 1992) (emphasis added).  As to the first requirement, the prior judgment must be a final, valid judgment not subject to modification.  See Donegal Steel Foundry Co. v. Accurate Products Co., 516 F.2d 583, 587 (3d Cir. 1975).  The District Court's opinion only addressed Debtor's motion to compel arbitration, and did not address the allegations in A-Tech's complaint.  Thus, there has been no final judgment on the merits as to all of the allegations; claim preclusion is inapplicable.  See, e.g., Wade v. Pittsburgh, 765 F.2d 405, 411 (3d Cir. 1985) (noting that because the effect of claim preclusion has the potential to extend "to matters that were not actually litigated in the prior action, claim preclusion may only be applied where there is a judgment on the merits in the earlier case").

     Under Third Circuit jurisprudence, issue preclusion -- also termed collateral estoppel -- applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the

decision; <u>and</u> (4) the party being precluded from relitigating the issue was fully represented in the prior action." <u>Raytech Corp. v. White</u>, 54 F.3d 187, 190 (3d Cir. 1995) (emphasis added). Obviously, issue preclusion does not apply to A-Tech's Claim because the District Court did not consider the identical issue currently being argued by the Representative.  In the instant Objection, the Representative argues that Texas' filed tariff doctrine bars A-Tech's Claim.  The District Court only addressed whether the tariff and, more generally, the filed tariff doctrine compelled arbitration.  These issues are far from identical. Accordingly, I find that the District Court's January 31, 2005 Memorandum and Order does not preclude the Representative from asserting that the filed tariff doctrine bars A-Tech's Claim.

Second, as to whether Texas' filed tariff doctrine bars A-Tech's Claim, I agree with the Representative that it does. Extensive case law makes it clear that in Texas, as elsewhere, filed tariffs govern utilities' relationships with their customers, and not any contradictory provisions of contracts that may have been executed.  <u>See, e.g.</u>, <u>Southwestern Elec. Power Co. v. Grant</u>, 73 S.W.3d 211, 216-17 (Tex. 2002) ("[F]iled tariffs govern a utility's relationship with its customers and have the force and effect of law . . . ."); <u>Mincron SBC Corp. v. Worldcom, Inc.</u>, 994 S.W.2d 785, 789 (Tex. App. 1999) ("This doctrine, known as the 'filed rate doctrine,' prevents an aggrieved customer from

6

enforcing contract rights that contradict governing tariff provisions . . . ."); <u>Kanuco Tech. Corp. v. Worldcom Network Servs.</u>, 979 S.W.2d 368, 372-73 (Tex. App. 1998) ("The tariff is not a mere contract; it is the law."). <u>See also</u> <u>AT&T v. Central Office Tel., Inc.</u>, 524 U.S. 214, 227 (1998) (noting that in the context of a tariff filed pursuant to the Communications Act of 1934, the terms and conditions "as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier"). The public policy underlying this doctrine also has been set forth amply in case law, including as to a tariff's limitations of liability provisions. <u>See, e.g.</u>, <u>Grant</u>, 73 S.W.3d at 217 ("A regulatory agency's rate-making authority authorizes it to approve a tariff's provision limiting liability, because a limitation on liability is an inherent part of the rate the utility charges for its services."); <u>Kanuco</u>, 979 S.W.2d at 373 ("The filed tariff doctrine has a two-fold purpose. First, the United States Supreme Court has long held that the reasonableness of rates in a regulated industry is a question solely for the governing regulatory body. Second, the doctrine prevents carriers from discriminating in the prices they charge for the same service among different ratepayers.")

In furtherance of this public policy, the tariff doctrine "conclusively presumes that both the carrier and its customers know the contents and effect of published tariffs." <u>Kanuco</u>, 979 S.W.2d at 373 (quoting <u>Southwestern Bell Tel. Co. v. Metro-Link Telecom,</u>

<u>Inc.</u>, 919 S.W.2d 687, 693 (Tex. App. 1996)).  Moreover, the Texas

Supreme  Court  has  confirmed  that  limitations  of  liability

provisions must be enforced by courts:

> We determined that a tariff's limitation on
> liability for economic damages is reasonable
> because  a  utility:  (1)  must  provide
> nondiscriminatory  service  to  all  customers
> within  its  area;  (2)  must  maintain  uniform
> rates and reduce costs;  (3) cannot accurately
> estimate  its  exposure  to  damages  or
> efficiently insure against risks;  (4) cannot
> increase  rates  for  all  customers  based  on
> losses one specific class of customers incurs;
> and (5) must comply with PUC regulations.

<u>Grant</u>, 73 S.W.3d at 217;  <u>see also</u> <u>Houston Lighting & Power Co. v.</u>

<u>Auchan USA, Inc.</u>, 995 S.W.2d 668, 671-72 (Tex. 1999) (noting that

"[a] number of courts that have considered the validity of tariff

provisions that limit a public utility's liability have enforced

the tariffs as written" and following that majority rule).

Prior  to  entering  into  an  agreement  to  service  A-Tech,

Debtors had filed two tariffs for approval by the Texas Public

Utility Commission.  Accordingly, one of these tariffs governed the

parties' relationship.  A-Tech argues that the applicable tariff is

the "Birch Tariff," which became effective April 15, 2002.  (Doc.

# 1157, ex. C.)  In contrast, the Representative argues that the

applicable  tariff  is  the  "Birch Telecom Tariff,"  which became

effective May 11, 1999.  (<u>Id.</u> at ex. B.)  Both tariffs contain

effectively  identical  limitations  of  liability  provisions.

(<u>Compare</u> <u>id.</u> at ex. C, p. 15 <u>with</u> <u>id.</u> at ex. B, p. 18.)  Both

tariffs were in effect for over a year prior to Debtors agreeing to service A-Tech.  As A-Tech argues that the Birch Tariff governs, I will analyze the Claim under that tariff.

The Birch Tariff provides that: "The Company [Debtors] will not be liable for any direct, indirect, incidental, special, consequential, exemplary or punitive damages to Customer or User [A-Tech] as a result of any Company <u>service</u>, equipment or facilities, or the acts or omissions or negligence of the Company, Company's employees or agents."  (<u>Id.</u> at ex. C, p. 15, § 2.6.1 (emphasis added).)  This provision clearly covers, and bars, A-Tech's Claim, all of which arises from Debtors' failure to provide data services.  Further, the Birch Tariff specifically provides that Debtors do not make any warranties or representations except those expressly set forth in the Birch Tariff.  (<u>Id.</u> at ex. C, p. 17, § 2.6.12.)  Thus, A-Tech's Claim against Debtors for fraud, negligence, breach of contract, deceptive trade practices, and breach of express warranty of services is barred pursuant to limitations of liability provisions of the Birch Tariff.  These provisions were in effect prior to Debtors agreeing to service A-Tech and were not altered during the time Debtors serviced A-Tech.  (Doc. # 1157, p. 19.)  Under Texas' filed tariff doctrine, A-Tech was charged with knowing the contents and effects of the published Birch Tariff.

## CONCLUSION

For the reasons stated above, A-Tech's Claim is disallowed in its entirety.